UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CAMOWRAPS, LLC**                                              **CIVIL ACTION**

**VERSUS**                                                      **NO. 13-6808**

**QUANTUM DIGITAL VENTURES LLC,**                               **SECTION I**
**ET AL.**

## ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiff to exclude defendants' expert witness, Mr. Gabriel M. Gelb, and a motion[2] filed by defendants to exclude plaintiff's expert witness, Dr. Leisa R. Flynn. Both motions are opposed.[3] For the following reasons, plaintiff's motion is **DENIED IN PART AND DEFERRED IN PART** and defendants' motion is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART**.

## BACKGROUND

Plaintiff, Camowraps, LLC ("Camowraps"), is "a leader in the business of manufacturing, selling, and distributing adhesive vinyl films and products," "which are often sold in camouflage patterns . . . [and] used on vehicles, hunting gear, sports equipment and any items with surfaces to which films can adhere."[4] Camowraps owns U.S. Registration No. 2,790,943 for the mark "CAMOWRAPS" and sells its products under that mark.[5]

Plaintiff alleges that defendants, Quantum Digital Ventures LLC and Haas Outdoors, Inc.,

---

[1] R. Doc. No. 76.
[2] R. Doc. No. 73.
[3] R. Doc. Nos. 89, 92.
[4] R. Doc. No. 1, ¶ 12.
[5] R. Doc. No. 82-3, at 1; R. Doc. No. 90-4, at 1.

1

are infringing on the CAMOWRAPS trademark in violation of federal and state law by licensing and selling similar vinyl wrap products under identical or confusingly similar marks.[6] As both an affirmative defense to Camowraps' trademark infringement claims and as a counterclaim seeking cancellation of the registered trademark, defendants contend that "CAMOWRAPS" is generic.[7]

Defendants have retained Mr. Gelb, a consultant with a market research firm who "specialize[s] in conducting and testifying on surveys for intellectual property litigation."[8] To buttress defendants' affirmative defense and counterclaim, Mr. Gelb surveyed consumers regarding their perception of whether the term "camo wrap" is generic or a brand name.[9] To refute Mr. Gelb's survey and conclusions, plaintiff has retained Dr. Flynn, a professor of marketing whose research focuses on "developing complex maps of interrelationships between personality variables related to consumption behavior and the development and testing of survey items designed to measure personality variables."[10] Each side moves to exclude the other's expert witness.

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[6] R. Doc. No. 1, at 9-11.
[7] R. Doc. No. 48, at 1, 10.
[8] R. Doc. No. 76-4, at 3.
[9] R. Doc. No. 76-4, at 5.
[10] R. Doc. No. 76-5, at 2.

      (b) the testimony is based on sufficient facts or data;

      (c) the testimony is the product of reliable principles and methods; and

      (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

      The U.S. Supreme Court's decision in Daubert "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the Daubert framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

      A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1)

whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and Daubert, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

In the context of survey evidence, "the general rule is that methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." *Honestech, Inc. v.*

*Sonic Solutions*, 430 F. App'x 359, 361 (5th Cir. 2011) (internal quotation marks omitted). "[A] survey need not be perfect to be admitted into evidence." *Id.* at 362.

## ANALYSIS

**A.     Plaintiff's Motion to Exclude Mr. Gelb's Testimony**

Plaintiff does not dispute Mr. Gelb's qualifications to conduct a consumer survey. Instead, plaintiff challenges the relevance of his opinions and his methodology. First, plaintiff contends that Mr. Gelb's opinions regarding genericness are not relevant because he conducted a survey regarding the terms "camo wrap" instead of plaintiff's actual trademark, "CAMOWRAPS."[11] Second, plaintiff argues that although Mr. Gelb professed to conduct a generally accepted "*Teflon*" survey for genericness,[12] he omitted a "mini-test" step which tests the participants' understanding of the difference between brand names and generic names.[13] Third, plaintiff contends that the survey is unreliable and inadmissible because the survey pool may have included non-hunters and excluded other purchasers of plaintiff's products.[14] Fourth, plaintiff objects to the portion of Mr. Gelb's report in which he lists twenty-nine websites using variations of "camo" and "wrap."[15]

In response, defendants first contend that Mr. Gelb's survey regarding the term "camo wrap" is relevant to the issues in this case because if the component words of a trademark are generic, then

---

[11] R. Doc. No. 76-2, at 4-7.
[12] A *Teflon* survey is "essentially a mini-course in the generic versus trademark distinction, followed by a test. That survey runs a participant through a number of terms (such as 'washing machine' and 'Chevrolet'), asking whether they are common names or brand names. After the participant grasps the distinction, the survey asks the participant to categorize a number of terms, including the term at issue." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 195 (3d Cir. 2008) (internal quotation marks and citations omitted).
[13] R. Doc. No. 76-2, at 8-11.
[14] R. Doc. No. 76-2, at 12-18.
[15] R. Doc. No. 76-2, at 18-20.

a combination of those words may also be generic.[16] Second, defendants respond that the mini-test is not categorically required in a *Teflon* survey and its absence in Mr. Gelb's survey is either harmless or goes only to the weight of his testimony.[17] Third, defendants argue that any criticism of the pool surveyed by Mr. Gelb is properly addressed on cross-examination and such criticism does not warrant complete exclusion of his testimony.[18] Fourth, defendants respond that "[u]tilizing his marketing expertise and decades of experience with trademarks, Mr. Gelb included these examples of third-party usage [to] determine that third-parties, other than Quantum, frequently use the terms 'camo' and 'wrap' and their variants to identify what a product is opposed to its source of origin."[19]

The Court has reviewed the parties' arguments and their citations to the law and the record and it finds no basis to exclude Mr. Gelb's survey and his opinions based on the results. First, relevance is a low bar and Mr. Gelb's choice to survey for the genericness of "camo wraps" is potentially relevant. *See Calista Enters. Ltd. v. Tenza Trading Ltd.*, No. 13-1045, 2014 WL 3896076, at *11-12 (D. Or. Aug. 8, 2014) (finding fact question as to genericness of composite trademark "porntube" based in part on expert testimony regarding genericness of component terms "porn" and tube").

Second, plaintiff has not sufficiently established that the absence of a mini-test in a *Teflon* survey is a fatal methodological error that renders Mr. Gelb's survey and opinions completely inadmissible. Certainly, the fact that the survey "fails to screen subjects to see if they understood

---

[16] R. Doc. No. 89, at 4-7.
[17] R. Doc. No. 89, at 10-14.
[18] R. Doc. No. 89, at 15-19.
[19] R. Doc. No. 89, at 20.

what a brand is" may be a weakness in the methodology. *See Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1193 (C.D. Cal. 2007). But the court in *Classic Foods* did not exclude a similar survey alleged to be defective and it instead accorded the survey "little evidentiary value" after admitting it during a seven-day trial. *See id.* at 1187, 1193. This criticism goes to the weight of the evidence.

Third, plaintiff's criticism of the universe of surveyed individuals likewise goes to the weight of the evidence, not its admissibility. The cases plaintiff relies on address the evidentiary weight accorded to flawed surveys admitted at a trial, not the admissibility of those surveys pursuant to Rule 702. *See Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir. 2003) (describing survey introduced at trial as "worthless"); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263-64 (5th Cir. 1980) (finding that surveys presented at trial were "substantially defective" and minimally probative); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1272-73 (S.D.N.Y. 1990) (holding that flaws in a survey introduced at trial "seriously undermine[d] the probative value of the study").

Fourth, based on the present state of the record, the Court declines to exclude that portion of Mr. Gelb's testimony relating to websites which use variations of "camo" and "wrap."[20] The Court initially notes that the existence of a website and authentication of a printout of that website can be established merely by personal knowledge of a witness and need not be the subject of expert opinion testimony. *See* Fed. R. Evid. 901(b)(1); *see also, e.g.*, *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011).[21] Accordingly,

---

[20]R. Doc. No. 76-4, at 8-13.

[21]As explained in *Foreword Magazine*, "exhibits reflecting information from commercial websites must be authenticated by one of the methods allowed by Rule 901, including testimony from a witness with personal knowledge, expert testimony, or reference to distinctive characteristics." 2011 WL 5169384, at *3.

Mr. Gelb may authenticate these websites as a fact witness to the extent that he has personal knowledge of them, regardless of his status as a retained expert..

With respect to any expert opinions Mr. Gelb has formed on the basis of the listed websites, the Court also defers ruling on the admissibility of those opinions until trial. It is at least sometimes appropriate for an expert witness to opine regarding the genericness of a trademark on the basis of use of the mark on websites by competitors. *See Calista Enters.*, 2014 WL 3896076, at *13. Mr. Gelb appears to have formed such an opinion in this case.[22] Although there are serious issues with respect to that opinion that must be resolved before it may be presented to the jury, such as the methodology Mr. Gelb applied to develop this "representative" selection of websites, why he believes those websites represent competitors to Camowraps LLC, and his basis for asserting that these websites use terminology "apparently without legal opposition by Camowraps LLC," those issues are deferred until trial. The Court will also take appropriate steps at trial to ensure that Mr. Gelb does not offer unfounded or inadmissible opinion testimony or encroach on impermissible

---

[22]The Court notes that the content of that opinion is not entirely clear. The extent of the discussion in his report regarding the websites is as follows:

> Another indicator of genericness is that camo wrap(s) or some form of that term is employed by a variety of business entities, apparently without legal opposition by Camowraps LLC. A representative list of such uses is included in this report.
> . . . .
> It is my understanding that one form of testing whether camo wrap is generic or a brand is whether it is in common usage. Proof of widespread use of the alleged trademark by competitors that has not been contested by the trademark holder is one such form of proof.
> A (partial) list of such entities' use was assembled and is shown in this section. R. Doc. No. 76-4, at 5, 8.

Nowhere does he use the word "opinion" in discussing the websites. By way of contrast, in the portion of his report addressing the survey results he straightforwardly expresses an opinion: "In my opinion, [the survey] demonstrates that camo wrap is a generic term." R. Doc. No. 76-4, at 5.

8

topics by, for example, offering opinions regarding the law which the jury should apply. *See, e.g.*, *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Accordingly, the motion to exclude Mr. Gelb is denied at this time.[23]

**B.    Defendants' Motion to Exclude Flynn**

Plaintiff has retained Dr. Leisa Flynn, a marketing professor with experience in surveys, to criticize Mr. Gelb's survey methodology and conclusions. Defendants move to exclude Dr. Flynn's testimony because she purportedly lacks expertise in trademark law or trademark genericness surveys, and she is therefore unqualified to opine regarding the propriety of Mr. Gelb's survey or opinions.

The parties spill much ink regarding the nature of Dr. Flynn's experience, publications, courses, and the extent to which her expertise is limited to fashion marketing and merchandising.[24] However, Dr. Flynn is plainly qualified as an expert in surveys and survey methodologies. Mr. Gelb conducted a survey. On the present state of the record, the Court concludes that at least some of Dr. Flynn's opinions are admissible with respect to how Mr. Gelb conducted his survey and the reliability of his results. For example, Dr. Flynn opines that the structure of the screening questions chosen by Mr. Gelb, in her opinion, does not result in "good assurance that all sample members are hunters or are in the market for the product category."[25] This opinion appears to be based on her experience with surveys and not on trademark law or the relevant product market, and it may

---

[23]The fact that Mr. Gelb delegated this internet research to an assistant may affect the weight of the evidence but, provided defendants establish a sufficient foundation regarding Mr. Gelb's involvement and supervision of the research, it does not render it inadmissible under these circumstances. *Cf. Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 891-92 (S.D. Tex. 2011).
[24]R. Doc. No. 73-2, at 2-3, 5; R. Doc. No. 92, at 3-5.
[25]R. Doc. No. 76-5, at 5.

9

conceivably assist the trier of fact in assessing the weight to be accorded to Mr. Gelb's survey.

On the other hand, defendants' motion has merit to the extent that Dr. Flynn's testimony merely reiterates material from intellectual property treatises, provided to her by plaintiff's counsel, with which Dr. Flynn has no preexisting experience. Dr. Flynn did not use or even have access to such material in the normal scope of her work.[26] *Cf. Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524-25 (5th Cir. 2013) (affirming district court's admission of expert opinion testimony because the expert "did more than just repeat information gleaned from external sources").

Accordingly, defendants' motion is granted to the extent that Dr. Flynn will not be permitted to offer opinion testimony based on the intellectual property treatises provided to her by plaintiff's counsel as set forth on page 2 of her report.[27] The exact parameters of her admissible expert opinion testimony must be deferred for further development at trial.

Accordingly, as set forth herein,

---

[26]For example, the following exchange at Dr. Flynn's deposition suggests that she is not qualified on the basis of her education or experience to opine regarding how to conduct a *Teflon* survey:
    Q.    When did you first become aware of the Teflon survey protocol?
    A.    Just in the course of working on this.
    Q.    How did you become aware of it?
    A.    In documents, legal directories or legal instruction books provided me by Ms. Breaux.
    Q.    Did you request specific types of legal publications?
    A.    No, they were totally outside the realm of my knowledge or availability. You can't even find them. For me. I don't have access to them.
R. Doc. No. 73-4, at 87.
[27]R. Doc. No. 73-3, at 2.

**IT IS ORDERED** that the motion to exclude Mr. Gelb's testimony is **DENIED IN PART AND DEFERRED IN PART**, and the motion to exclude Dr. Flynn's testimony is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART**, subject to further development of the record at trial.

New Orleans, Louisiana, January 28, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**