UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CAMOWRAPS, LLC**                                                                              **CIVIL ACTION**

**VERSUS**                                                                                              **NO. 13-6808**

**QUANTUM DIGITAL VENTURES LLC,**                                               **SECTION I**
**ET AL.**

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Haas Outdoors, Inc. ("Haas"), for summary judgment contending that plaintiff cannot demonstrate that Haas is liable for Quantum's alleged infringement of plaintiff's trademark. Plaintiff opposes the motion.[2] For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff, Camowraps, LLC ("Camowraps"), is "a leader in the business of manufacturing, selling, and distributing adhesive vinyl films and products," "which are often sold in camouflage patterns . . . [and] used on vehicles, hunting gear, sports equipment and any items with surfaces to which films can adhere."[3] Camowraps owns U.S. Registration No. 2,790,943 for the mark "CAMOWRAPS" and sells its products under that mark.[4]

Plaintiff alleges that defendants, Quantum Digital Ventures LLC ("Quantum") and Haas Outdoors, Inc., are infringing on the CAMOWRAPS trademark in violation of federal and state law

---

[1]R. Doc. No. 71.
[2]R. Doc. No. 93.
[3]R. Doc. No. 1, ¶ 12.
[4]R. Doc. No. 82-3, at 1; R. Doc. No. 90-4, at 1.

by licensing and selling similar vinyl wrap products under identical or confusingly similar marks.[5] Specifically, Quantum sells competing camouflage-patterned adhesive vinyl products, and Haas licenses to Quantum its camouflage patterns and "MOSSY OAK" trademark for incorporation into Quantum's products.[6] Because it only licenses a pattern to Quantum and does not manufacture or advertise any of the allegedly infringing products, Haas contends that it neither infringes on plaintiff's trademark nor can it be liable for Quantum's alleged infringement on a derivative or vicarious basis.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[5] R. Doc. No. 1, at 9-11.
[6] R. Doc. No. 71-2, at 2; R. Doc. 93-1, at 2.

2

The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## ANALYSIS

The summary judgment briefing has narrowed the basis for plaintiff's claims against Haas to two theories: (1) contributory liability based on Haas's continued provision of products or services to Quantum with knowledge of the alleged infringement, and (2) vicarious liability based on a purported partnership between Haas and Quantum.[7] Haas's motion must be denied because genuine factual issues preclude summary judgment as to the first theory.

**A.      Contributory Liability**

With respect to the first theory of liability, "if a manufacturer or distributor . . . continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). The *Inwood*

---

[7]Haas addressed direct infringement and intentional inducement in its initial memorandum, R. Doc. No. 71-3, at 2-3, and in its opposition plaintiff did not pursue those theories, R. Doc. No. 93, at 3-4, 14-15.

3

theory of contributory infringement has been extended beyond product suppliers to cases involving providers of services if the service provider exercises "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).

The parties dispute (1) whether Haas had the requisite knowledge of Quantum's alleged infringement, (2) whether Haas supplied a product to Quantum or provided a service, and (3) if Haas provided a service, whether Haas exercised any control over Quantum's infringement.

First, Haas argues that it lacked the requisite actual or constructive knowledge of infringement required to subject it to contributory infringement liability.[8] *See Inwood*, 456 U.S. at 854 (requiring that defendant "knows or has reason to know" it is supplying product to one who is engaging in trademark infringement). Haas contends that "[c]ontributory infringement should not extend to cases where there is uncertainty or a good-faith belief of non-infringement," relying on *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010).[9]

In *Tiffany*, the plaintiff sought to hold eBay liable for contributory infringement because "eBay continued to supply its services to the sellers of counterfeit Tiffany goods while knowing or having reason to know that such sellers were infringing Tiffany's mark." *Id.* at 106. The Second Circuit distinguished between eBay's knowledge of "particular listings" and "generalized knowledge" that counterfeiting occurred on its site. *See id.* at 106-07. Because eBay promptly removed particular counterfeit listings brought to its attention by Tiffany, the Second Circuit concluded that "no liability arises with respect to those terminated listings." *Id.* at 106. As to other

---

[8]R. Doc. No. 71-3, at 8-9.
[9]R. Doc. No. 71-3, at 9.

4

listings which Tiffany did not specifically bring to eBay's attention, the Second Circuit affirmed a finding of no contributory liability, concluding that "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of *which particular listings* are infringing or will infringe in the future is necessary." *Id.* at 107 (emphasis added).

Accordingly, *Tiffany* construed the *Inwood* requirement of actual or constructive knowledge of infringement to relate to the specificity of the notice given to the defendant with respect to the infringing activity and not to the defendant's certainty that what it has been alerted to is in fact infringement. *Cf. Inwood*, 456 U.S. at 861 (White, J., concurring) ("The mere fact that a generic drug company can anticipate that some illegal substitution will occur to some unspecified extent, and by some unknown pharmacists, should not by itself be a predicate for contributory liability."). Other courts appear to have followed *Tiffany* and examined whether a defendant had knowledge of the specific identity of an alleged infringer. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1253 (10th Cir. 2013) (discussing *Tiffany* and stating that the opinion "implicitly assumed that once the defendant knew of an *identified* third party's infringing ads, it would be a contributory infringer if it did not halt the ads") (emphasis added); *see also Coach Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (citing *Tiffany* for proposition that a service provider "may be liable for contributory trademark infringement if it knew or had reason to know *identified* vendors were engaging in infringing activity") (emphasis added).

Although the licensor/licensee relationship in this case is different than the online marketplace context of *Tiffany*, if anything that case helps plaintiff, not Haas. Plaintiff submits

5

competent summary judgment evidence of a conference call with representatives of Haas[10] and a cease-and-desist letter which identified particular alleged infringing uses of plaintiff's mark by Quantum.[11] The jury could conceivably find on the basis of this evidence that Haas had "contemporary knowledge of which particular listings" by Quantum allegedly infringed on plaintiff's trademark. *Tiffany*, 600 F.3d at 107. Accordingly, there is a genuine dispute of material fact as to whether Haas had the requisite actual or constructive knowledge.

The next issue is whether, by licensing its intellectual property and domain name to Quantum, Haas provided a service, as Haas contends,[12] or whether it supplied a product, as plaintiff contends.[13] This issue is relevant because if Haas supplied a product then the normal *Inwood* test applies, but if it provided a service then plaintiff must prove an additional element: that Haas exercised "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin*, 194 F.3d at 984. Neither party cites a case directly on point and the licensing relationship in this case falls in a gray area of the "product/service distinction suggested by *Inwood*." *See id.*

The Court need not decide this question in connection with this summary judgment motion, however, because even if Haas provided a service to Quantum, plaintiff raises a genuine dispute of material fact as to the requisite degree of control. Plaintiff refers to portions of the contracts between Quantum and Haas pursuant to which Quantum was contractually obligated to "comply . . . with any applicable trademark law" in connection with its use of Haas's mark "subject to the review and

---

[10] R. Doc. No. 93-3, at 4.
[11] R. Doc. No. 93-4.
[12] R. Doc. No. 71-3, at 4.
[13] R. Doc. No. 93-4, at 8-9.

approval of Haas, in its sole discretion.[14] The contracts also prohibit Quantum from using the internet domain name it licensed from Haas to "infringe or violate the rights of any other party or breach any contract or legal duty to any other parties, or violate any applicable law," subject to "immediate termination of this Agreement as well as the License Agreement in the sole discretion of Haas."[15] Having reviewed those materials, the Court concludes that plaintiff has generated a genuine issue of material fact as to Haas's legal and practical authority to control how Quantum used Haas's mark in connection with the alleged infringement of plaintiff's mark. Regardless of whether the product or service version of the *Inwood* test applies, factual issues preclude summary judgment.

Finally, in its reply brief Haas contends that it did not "continue to supply" anything to Quantum because after it initially provided the patterns and intellectual property to Quantum, "Haas has not furnished anything further to Quantum."[16] The Court concludes that this is also an issue for the jury in light of the contractual provisions suggesting Haas's ongoing right to approve Quantum's use of Haas's trademark, as discussed above.

### B. Vicarious Liability

Haas also moves for summary judgment with respect to any theory of vicarious liability because "no agency relationship exists" between Haas and Quantum.[17] According to Haas, its relationship with Quantum is purely one of licensor and licensee, which fails as a matter of law to establish any agency or apparent partnership relationship.[18] In response, plaintiff lists similarities

---

[14] Ex. H to plaintiff's opposition (under seal); *see also* Ex. I to plaintiff's opposition (Haas's brand standards manual stating that "advertising employing the Mossy Oak trademark, logo and/or trade name must be approved in advance by our Marketing Department")
[15] Ex. F to plaintiff's opposition (under seal).
[16] R. Doc. No. 112, at 5.
[17] R. Doc. No. 71-3, at 9.
[18] R. Doc. No. 7-13, at 10-11.

7

and connections between Quantum and Haas to attempt to establish an apparent partnership between the two such that Haas can be liable vicariously for Quantum's alleged infringement.[19]

"[A] joint tortfeasor may bear vicarious liability for trademark infringement by another. This theory of liability requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *E.g.*, *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). Liability may be imposed based on an actual partnership, or based on an apparent partnership which arises "because of the actions of a principal or employer in somehow misleading the public into believing that the relationship or the authority exists." *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1440 (3d Cir. 1994). "Courts have strictly applied the test for vicarious trademark liability based on agency principles, and, unlike vicarious copyright liability, 'courts do not recognizes vicarious liability in the trademark context based on ability to supervise in combination with a financial interest.'" *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 613-14 (S.D. Tex. 2012) (quoting *United States v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1106 (D. Minn. 2000)). "The mere *ipse dixit* of [a plaintiff] that an agency relationship exists does not conjure one." *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 686 (D. Md. 2001).

Plaintiff falls woefully short of establishing more than a "metaphysical" possibility of vicarious liability in this case. First, plaintiff does not cite a single case which actually found sufficient allegations or facts to create vicarious trademark liability based on an apparent

---

[19]R. Doc. No. 93, at 15-20.

partnership, let alone on facts similar to these.[20] Second, the facts which plaintiff presents to gin up vicarious liability permit no inference of a relationship other than that of licensor-licensee. *See Clearline Techs.*, 871 F. Supp. 2d at 614-15 (granting motion to dismiss because the plaintiff's "allegations show only that Cooper is authorized to advertise and sell the Cooper B-Line products at issue in this case"). Plaintiff relies heavily on similarities between the names under which Haas and Quantum did business, which are purely superficial and ignore the indisputably separate corporate existences of Haas and Quantum. Moreover, the only statement *by Haas* which could possibly "mislead[] the public into believing that the relationship or the authority exists" is a single press release, which contains no more than the "vague, puffery-like references to a 'partnership'" that do not support vicarious liability as a matter of law. *See id.* at 614. In short, plaintiff fails to show a genuine dispute of material facts which could possibly give rise to vicarious liability, and Haas's motion is granted as to that theory.

**IT IS ORDERED** that Haas's motion is **GRANTED** as to vicarious liability and **DENIED** as to contributory liability.

New Orleans, Louisiana, February 9, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[20]The only case which comes remotely close to the outcome plaintiff desires is *AT&T v. Winback*, which remanded for additional findings of fact as to whether a defendant held its sales representatives, who were independent contractors, "out to the public as its servants or as itself." 42 F.3d at 1440. But *AT&T* involved allegations of sales representatives deceptively misrepresenting themselves to be employees of AT&T, *see* 42 F.3d at 1425, and it is not analogous to the facts of this case.