# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**CAMOWRAPS, LLC**                                                          **CIVIL ACTION**

**VERSUS**                                                                          **NO. 13-6808**

**QUANTUM DIGITAL VENTURES LLC,**                          **SECTION I**
**ET AL.**

## ORDER AND REASONS

Before the Court are a motion[1] filed by plaintiff for partial summary judgment, and a motion[2]

for summary judgment filed by defendants, Quantum Digital Ventures LLC and Haas Outdoors, Inc.

For the following reasons, plaintiff's motion is **DENIED** and defendants' motion is **GRANTED IN**

**PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff, Camowraps, LLC ("Camowraps"), is "a leader in the business of manufacturing,

selling, and distributing adhesive vinyl films and products," "which are often sold in camouflage

patterns . . . [and] used on vehicles, hunting gear, sports equipment and any items with surfaces to

which films can adhere."[3] Camowraps owns U.S. Registration No. 2,790,943 for the mark

"CAMOWRAPS" and sells its products under that mark.[4]

Plaintiff alleges that defendants, Quantum Digital Ventures LLC and Haas Outdoors, Inc.,

are infringing on the CAMOWRAPS trademark in violation of federal and state laws by licensing

---

[1] R. Doc. No. 82.
[2] R. Doc. No. 74.
[3] R. Doc. No. 1, ¶ 12.
[4] R. Doc. No. 82-3, at 1; R. Doc. No. 90-4, at 1.

and selling similar vinyl wrap products under identical or confusingly similar marks.[5] Defendants contend that "CAMOWRAPS" is generic and not entitled to trademark protection, which they assert as both an affirmative defense to Camowraps' trademark infringement claims and as a counterclaim requesting that the Court cancel the registration of plaintiff's trademark.[6]

Plaintiff moves for partial summary judgment with respect to defendants' affirmative defense and counterclaim predicated on the purported genericness of the "CAMOWRAPS" mark.[7] Defendants move for summary judgment as to (1) their genericness affirmative defense and counterclaim, (2) their fair-use affirmative defense, (3) plaintiff's trademark infringement claim, (4) plaintiff's claim pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA"), and (5) plaintiff's claim for damages, profits, or attorney's fees.[8]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of

---

[5]R. Doc. No. 1, at 9-11. Haas's separate motion for summary judgment on the basis that it is not liable for Quantum's direct infringement will be addressed in another order and reasons. For purposes of this motion, filed jointly by Haas and Quantum, the Court will treat defendants collectively except where otherwise noted.
[6]R. Doc. No. 48, at 1, 10.
[7]R. Doc. No. 82-2, at 1.
[8]R. Doc. No. 74-3, at 2.

evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Plaintiff and defendants cross-move for summary judgment with respect to the issue of genericness as raised in defendants' affirmative defense and counterclaim for cancellation of plaintiff's trademark.[9] The Court must consider cross-motions separately "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

# ANALYSIS

---

[9]R. Doc. No. 74-3, at 2-4; R. Doc. No. 82-2, at 1.

A.      **Substantive Claims**

1)      **Genericness**

      a.      **Applicable Law**

"A generic term refers to 'a particular genus or class of which an individual article or service is but a member,' suggesting the 'basic nature of articles or services.'" *Tex. Pig Stands, Inc. v. Hard Rock Cafe, Int'l*, 951 F.2d 684, 692 (5th Cir. 1992). "The test for genericness is whether the public perceives the term primarily as the designation of the article." *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 227 (5th Cir. 1995) (alterations and internal quotation marks omitted). "Put another way, 'the primary significance of' a trademark 'in the minds of the consuming public is not the product but the producer.'" *Id.* (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)). The burden is on defendants to show the genericness of plaintiff's registered trademark. *See, e.g.*, *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 705 (1st Cir. 2007). Genericness is a fact question. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 541-42 (4th Cir. 2004).

When considering whether a trademark is generic, the Court looks to dictionary definitions, consumer surveys, "the so-called 'imagination test,'" "whether others in the same business would generally need the word to adequately describe their product or service," expert testimony by language and usage scholars, and "evidence regarding how many other businesses, in the same industry, use the term to describe their product." *See U. Nat'l Bank of Tex., Laredo, Tex. v. U. Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 847-48 (5th Cir. 1990) (emphasis omitted)*; see also* J. Thomas McCarthy, 2 *McCarthy on Trademarks & Unfair Competition* § 12:13 (4th ed. 2014) (listing same six categories of relevant evidence).

4

The parties disagree whether, when deciding if the composite trademark "CAMOWRAPS" is generic, it is appropriate to consider evidence pertaining to the component terms "camo" and "wrap," such as the dictionary definitions of those terms.[10] On the one hand, plaintiff is correct that "[t]he whole, in trademark law, is *often* greater than the sum of its parts," and that "[c]ommon words in which no one may acquire a trademark because they are descriptive or generic *may*, when used in combination, become a valid trademark." *Assoc. of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1140 (5th Cir. 1982) (emphasis added). Consequently, the "CAMOWRAPS" mark "'should be considered in its entirety.'" *Id.* (quoting *Estate of Beckwith v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920)).

But defendants are also correct that "*[o]ther* composite terms are nothing more than the sum of their parts, such as 'multistate bar examination' and 'light beer.'" *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986) (emphasis added). Therefore, "the principle that the validity of a mark is to be determined by looking at the mark as a whole" does not "preclude[] a court from examining the meanings of the component words in determining the meaning of the mark as a whole." *See id.* The Court concludes that the ultimate question for the trier of fact is whether "CAMOWRAPS" is generic, but the trier of fact may permissibly consider evidence related to the component terms of the mark, "camo" and "wrap."

### b.    Evidentiary Objections

Plaintiff objects on the basis of relevance, authentication, and hearsay to Exhibits E, F, and G, attached to defendants' motion,[11] which are printouts of assorted web pages offered to show

---

[10]R. Doc. No. 74-3, at 5-6; R. Doc. No. 82-2, at 5-6.
[11]R. Doc. No. 74-8 to -14.

usage of "camo," "wrap," and "camowraps."[12] First, plaintiff objects that some of those materials are irrelevant because they refer to products other than "'plastic laminated films, namely, camouflage adhering films for motor vehicles, and hunting, camping, and sporting equipment' . . . [e.g.] (the goods covered by the CAMOWRAPS mark)."[13] This argument is overbroad because most of the exhibits are relevant to the disputed products and are appropriately considered in connection with these motions. To the extent that plaintiff has more focused relevance objections to particular documents, plaintiff may timely file an appropriate motion in limine in accordance with the Court's scheduling order.[14]

Plaintiff also objects to Exhibits E, F, and G on the basis of lack of authentication and hearsay.[15] With respect to authentication, defendants have submitted affidavits of the individuals who accessed the web pages which, in combination with information available on the face of the printouts themselves, suffice to establish that the printouts are what defendants claim them to be as required by Rule 901(a) of the Federal Rules of Evidence. *See, e.g.*, *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (finding "screen shots of Internet websites" authenticated on the basis of affidavits "along with other indicia of reliability (such as the Internet domain address and the date of printout)"). The cases upon which plaintiff relies are inapposite.[16]

---

[12]R. Doc. No. 95, at 6-9.

[13]R. Doc. No. 95, at 6.

[14]R. Doc. No. 52.

[15]R. Doc. No. 95, at 7-8. Plaintiff raised this objection in its opposition to summary judgment pursuant to Rule 56(c)(2). In connection with their reply, defendants submitted affidavits from the individuals who personally accessed and captured those websites. *See* R. Doc. No. 111, at 1-3.

[16]For example, in *Illusions-Dallas Private Club, Inc. v. Steen*, an attorney's affidavit was insufficient to authenticate studies found on the internet, but it was sufficient to "identif[y] the source from which he obtained" those studies, which is all defendants need do in this case to establish usage of

6

Likewise, the Court is not persuaded by plaintiff's hearsay objections. Although the web page printouts are out-of-court statements, defendants do not offer them for the truth of any matters asserted in those web pages. Rather, defendants offer Exhibits E, F, and G, as evidence of usage of "CAMOWRAPS" and its component terms among purportedly relevant populations. These exhibits are relevant for the purpose of showing that the statements were made and not for the truth of any matter asserted therein. For example, a comment from an Instagram user who "Love[s] the #camowrap on this truck, so realistic!" is relevant for use of the term "#camowrap" regardless of the truth of the user's actual feelings of affection.[17] *See Foreword Magazine*, 2011 WL 5169384, at *4 (admitting screen shots of internet sites in trademark case because "these exhibits are offered to show the use of trademarks in commerce or the mentioning of those marks by various news organizations," and not "for the truth of the matter asserted"). Accordingly, plaintiff's hearsay and authentication objections are overruled for the purposes of this motion, although plaintiff may reurge the same objections at trial.[18]

### c.    Analysis

With those preliminary issues resolved, the Court finds that summary judgment is not

---

terms. *See* 2005 WL 1639211, at *9 (N.D. Tex. July 13, 2005), *rev'd in part on other grounds*, 482 F.3d 299 (5th Cir. 2007). In addition, the Court attaches no persuasive weight to *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, and its categorical dismissal of "inherently untrustworthy" evidence obtained on "the so-called Web." *See* 76 F. Supp. 2d 773, 774-75 (S.D. Tex. 1999) (expressing skepticism of "voodoo information taken from the Internet," perceiving the internet to be "one large catalyst for rumor, innuendo, and misinformation" and believing that "hackers can adulterate the content on *any* web-site from *any* location at *any* time") (emphasis in original).

[17]R. Doc. No. 74-12, at 11.

[18]Plaintiff's counsel also submits an unusual personal affidavit addressing the purported evidentiary deficiencies of Exhibits E, F, and G. R. Doc. No. 95-4. The Court is not aware of any procedure or mechanism authorizing such an affidavit and, accordingly, the Court construes it only as excess briefing with respect to plaintiff's evidentiary objections.

warranted in favor of either party with respect to the question of genericness because of numerous genuinely disputed material facts. For example, although defendants conducted the only consumer survey, the jury could potentially attach little or no weight to that survey for the reasons set forth in this Court's prior order and reasons addressing its admissibility.[19] With respect to defendants' examples of usage in the industry, the Court cannot conclude that such evidence is so overwhelming as to compel a jury finding of genericness, or so paltry as to be insufficient as a matter of law to support such a finding. This is particularly true in light of particular criticism raised by plaintiff as to specific exhibits.[20]

Drawing all inferences in the nonmovant's favor with respect to both cross-motions, the Court concludes that the trier of fact could permissibly find that "CAMOWRAPS" is or is not generic. Accordingly, neither plaintiff nor defendants are entitled to summary judgment on that question. Plaintiff's motion for partial summary judgment is denied and defendants' motion is denied as to its affirmative defense and counterclaim.

**2)     Fair Use**

Defendants also move for summary judgment on their affirmative defense of fair use.[21] "When the allegedly infringing term is 'used fairly and in good faith only to describe to users the goods or services of a party, or their geographic origin, . . . a defendant in a trademark infringement action may assert the 'fair use defense.'" *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir. 1983) (citing 15 U.S.C. § 1115(b)(4)), *abrogated on other grounds by KP*

---

[19]R. Doc. No. 119.
[20]R. Doc. No. 95-4, at 5-6 (pointing out web pages which are no longer accessible or could have been hijacked).
[21]R. Doc. No. 74-3, at 9-12.

*Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). "The fair-use defense allows a party to use a term in good faith to describe its goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 270-71 (5th Cir. 1999). "The fair-use defense does not apply if a term is used as a mark to identify the markholder's goods or services, but the fair use of a term may be protected even if some residual confusion is likely." *Id.* at 271.

The parties dispute whether defendants' use of allegedly infringing marks is descriptive, fair, and in good faith.[22] *See* 15 U.S.C. § 1115(b)(4). Fact questions preclude resolution of these issues on summary judgment. For example, the parties suggest plausible contrary inferences from the fact that Quantum prefaces the allegedly infringing marks with "MOSSY OAK®." According to defendants, "MOSSY OAK®" is the brand and what follows is merely descriptive of the good or category of product.[23] According to plaintiff, Quantum frequently uses another brand name following "MOSSY OAK®," which suggests to the consumer that the subsequent language is used in a trademark sense and not a descriptive sense.[24] Neither suggested inference is wholly implausible. Similar opposing inferences could be drawn with respect to Quantum's ability to use different terminology to describe its products or whether Quantum has acted in good faith. *See Zatarains*, 698 F.2d at 796. Because the Court must draw inferences in plaintiff's favor in deciding this motion for summary judgment, defendants' motion is denied as to defendants' fair-use affirmative defense.

**3)     Infringement**

---

[22]R. Doc. No. 95, at 10-14; R. Doc. No. 111, at 6-7.
[23]R. Doc. No. 74-3, at 10.
[24]R. Doc. No. 95, at 11-12.

Defendants also move for summary judgment as to plaintiff's infringement claims under the Lanham Act on the basis that plaintiff cannot show a likelihood of confusion.[25] "In a trademark infringement action, the paramount question is whether one mark is likely to cause confusion with another." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).[26] "'Likelihood of confusion' means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Id.* The Court examines "the following nonexhaustive 'digits of confusion' in evaluating likelihood of confusion: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* at 227. "[L]ikelihood of confusion is typically a question of fact," but "summary judgment is proper if the record compels the conclusion that the movant is entitled to judgment as a matter of law." *See id.* at 227 (internal quotation marks omitted).

Genuine material issues of fact as to many of the "digits of confusion" preclude summary judgment with respect to the "likelihood of confusion" issue. With respect to the first digit, the same factual disputes that preclude summary judgment as to genericness apply to the analysis of the strength of plaintiff's trademark, which in turn determines the level of protection the mark deserves. *See, e.g.*, *Taco Cabana*, 505 U.S. at 768. The trier of fact could place little or no weight on defendants' survey and usage evidence and could find that plaintiff's mark is entitled to some protection.

With respect to the second digit, mark similarity, the parties offer competing interpretations.

---

[25]R. Doc. No. 74-3, at 12-13.

[26]The same standard applies to Lanham Act claims for unfair competition and false designation of origin. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

According to defendants, it uses only "camo" and "wrap," often with an intervening term, which reduces the similarity to "CAMOWRAPS."[27] According to plaintiff, "the CAMOWRAPS mark looks nearly identical to 'camo wrap(s),' sounds identical to 'camo wrap(s),' and means the same thing as 'camo wrap(s),'" which weighs in favor of a finding of confusion.[28] Although plaintiff's assertion that "CAMOWRAPS" means the same thing as "camo wrap(s)" is in some tension with its position with respect to the genericness issue discussed above, the Court concludes that the trier of fact could find that similarities between plaintiff's mark and the disputed infringement weighs in favor of a likelihood of confusion.

With respect to the third digit, similarity between plaintiff's and Quantum's products, defendants "concede[] that there are some similarities in the parties' products because they both sell camouflage-patterned vinyl wraps for vehicles and other equipment," but insists that the different camouflage patterns are "a crucial dissimilarity" between the products.[29] The trier of fact could find that this purported difference is not significant and, therefore, this digit weighs in favor of a likelihood of confusion for summary judgment purposes.

With respect to the fourth and fifth digits, outlet and purchaser identity and advertising media identity, the parties agree that their products are marketed and sold on the internet and that they compete for the same consumers.[30] Although the parties disagree how much weight these digits should receive, the trier of fact could find, at least to some degree, that they weigh in favor of a likelihood of confusion.

[27]R. Doc. No. 74-3, at 16.
[28]R. Doc. No. 95, at 17.
[29]R. Doc. No. 74-3, at 16.
[30]R. Doc. No. 74-3, at 17-18; R. Doc. No. 95, at 19-20.

With respect to the sixth digit, defendant's intent, defendants assert again that they used the allegedly infringing terms only in a descriptive sense and that the record does not support an inference of any bad faith.[31] *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 ("Bad faith in the adoption and use of a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods or other efforts by a party to 'pass off' its product as that of another."). Plaintiff does not address this "digit of confusion" in its opposition, although in connection with other issues it asserts that "it appears that defendants intentionally used adulterated variations of plaintiff's CAMOWRAPS mark in their marketing to profit from the goodwill Camowraps has built up over the past ten plus years."[32] However, the only evidence plaintiff cites in support of this contention is a portion of a deposition discussing the fact that Quantum hired an individual to develop an advertising marketing strategy.[33] Drawing all inferences in plaintiff's favor, the Court concludes that this digit of confusion is at most marginally in plaintiff's favor.

With respect to the seventh digit, actual confusion, plaintiff submits no evidence.[34] Such a showing is not mandatory, but actual confusion is "the best evidence of a likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229. Plaintiff cites defendants' own consumer survey for the proposition that 20% of surveyed consumers mistakenly think that "camo wrap" is a brand name, but this falls far short of establishing even a single instance of a consumer actually being confused by defendants' alleged infringement. *See id.* at 230 (reversing grant of summary judgment because court improperly

---

[31]R. Doc. No. 74-3, at 18.
[32]R. Doc. No. 95, at 14.
[33]Ex. D to R. Doc. No. 95 (filed under seal).
[34]R. Doc. No. 95, at 20.

12

discounted evidence of specific incidences of consumers buying the wrong cosmetology kit). Therefore, this digit favors defendants and weighs against a finding of likelihood of confusion.

With respect to the eighth digit, care exercised by potential purchasers, the parties disagree regarding the significance of the price of their products. *Compare Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173-74 (5th Cir. 1986) (explaining that purchasers of vacuum cleaners "for professional and institutional purposes at a cost in the thousands of dollars . . . are virtually certain to be informed, deliberative buyers," and therefore the market for those products is "not the sort of purchasing environment in which confusion flourishes"), *with Gruma Corp. v. Mexican Rests., Inc.*, 497 F. App'x 392, 396 (5th Cir. 2012) ("The district court correctly found that because the parties' products are inexpensive they would not be purchased with a high degree of care as to their origin[,] increasing risk of confusion."). Defendants assert that camouflage truck wraps are expensive and that consumers will be careful in their purchases, which weighs against a likelihood of confusion as to the source of the wraps.[35] In response, plaintiff criticizes defendants' survey evidence for purportedly testing low-income individuals, which misses the point as to the degree of care consumers will exercise in purchasing expensive truck wraps.[36] Plaintiff has not explained how this factor can be construed in its favor.

"No digit is dispositive, and the digits may weigh differently from case to case, depending on the particular facts and circumstances involved." *See Xtreme Lashes*, 576 F.3d at 227 (internal quotation marks omitted). Although some digits favor defendants, the trier of fact could conclude otherwise as to other digits. Considering these unsettled factual issues, the competing inferences

---

[35]R. Doc. No. 74-3, at 19-20.
[36]R. Doc. No. 95, at 20-21.

permitted by the evidence, and the holistic nature of the likelihood-of-confusion analysis, the Court cannot at this time conclude that the outcome of trial is "preordained." Defendants' summary judgment as to non-infringement is denied.

**4)     LUTPA**

Defendants also move for summary judgment on plaintiff's claim under LUTPA.[37] "[T]he requirements for a claim under LUTPA mirror those of the Lanham Act," and the "likelihood of confusion is the essential ingredient for [both] claims." *See Bd. of Supervisors for La. St. Univ. Ag. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 n.130 (5th Cir. 2008). Accordingly, summary judgment is denied as to plaintiff's LUTPA claim for the same reasons set forth above.[38]

**B.     Remedies**

"Remedies for § 1114 violations are provided under §§ 1116 (injunctive relief), 1117 (profits, damages, costs, attorneys' fees), and 1118 (destruction of infringing articles)." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). "Damages" and "defendant's profits" are "merely alternative ways of measuring the injury that either the plaintiff or the public has suffered by defendant's wrong." *See* 5 McCarthy, *supra*, § 30:57.

Defendants move for summary judgment with respect to three categories of relief authorized by 15 U.S.C. § 1117(a): (1) "any damages sustained by the plaintiff," (2) "defendant's profits," and

---

[37]R. Doc. No. 74-3, at 24.

[38]Although defendants cite well-established cases stating that LUTPA generally prohibits only "[f]raud, misrepresentation, deception, and similar conduct," *see Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993), they do not cite a case in the trademark context. It is unclear from the Fifth Circuit's holding that "the requirements for a claim under LUTPA mirror those of the Lanham Act," *Smack Apparel*, 550 F.3d at 490 n.130, whether an additional showing of fraud is required, or whether establishment of infringement alone suffices. In the absence of citation to authorities directly on point, defendants have not established their entitlement to judgment as a matter of law as to the LUTPA claim.

(3) "reasonable attorney fees."[39] Summary judgment on damages is not premature, as plaintiff

contends;[40] a plaintiff's total inability to prove damages may be a proper basis for a motion for

summary judgment. *See, e.g.*, *Moore v. CITGO Refining & Chems. Co.*, 735 F.3d 309, 314

(affirming summary judgment granted "based on plaintiffs' inability to prove damages").

Accordingly, the Court will examine whether there are any genuine factual disputes as to the relief

challenged in defendants' motion.

### 1)   Damages

"Recovery of damages for trademark infringement is subject to the usual standards of

damages: plaintiff must prove both causation and amount." 5 McCarthy, *supra*, § 30:72. Defendants

point to the lack of any quantification of actual damages in the record,[41] citing the testimony of

plaintiff's president that he has not quantified any damages suffered by plaintiff as a result of the

alleged infringement.[42] In response, plaintiff cites no record evidence quantifying any actual losses

it has allegedly incurred.[43] Accordingly, in the absence of any evidence to support a finding of actual

---

[39]R. Doc. No. 74-3, at 20. Defendants do not move for summary judgment with respect to the availability of injunctive relief.

[40]R. Doc. No. 95, at 21-22.

[41]R. Doc. No. 74-2, at 21.

[42]R. Doc. No. 74-30, at 13.

[43]*See* R. Doc. No. 95, at 22. Plaintiff's bare assertion that it "always has the right to ask for statutory damages" merely cites 15 U.S.C. § 1117 without elaboration. R. Doc. No. 95, at 22. Although that statute authorizes statutory damages for cases involving use of a counterfeit trademark, *see* 15 U.S.C. § 1117(c), or for cases involving bad-faith registration of a domain name, *see* 15 U.S.C. §§ 1117(d), 1125(d)), plaintiff does not explain how those provisions could apply to this case. In addition, the case plaintiff cites for the proposition that "injury can be presumed" addressed the injury element for purposes of injunctive relief and does not suggest that proof of any particular quantum of damages can be presumed. *See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs.*, 778 F. Supp. 2d 726, 760 (N.D. Tex. 2011). In an interrogatory response, plaintiff asserted that "the amount of damages is unknown at this point, as this would be calculated after a decision on the merits, with a disgorgement/accounting of defendants' profits." R. Doc. No. 74-26, at 25. Entitlement to a portion of defendants' profits is a separate element of recovery which will be discussed below.

damages, defendants' motion for summary judgment is granted as to actual damages pursuant to the Lanham Act.

LUTPA likewise permits recovery of "actual damages." La. Rev. Stat. § 51:1409(A). The same absence of any evidence of quantified actual losses is fatal to any recovery of actual damages under LUTPA. Accordingly, summary judgment is granted as to actual damages pursuant to LUTPA as well.

### 2)      Profits

With respect to plaintiff's entitlement to a portion of defendant's profits, such "[a]n award . . . is not automatic." *Seatrax*, 200 F.3d at 369. Whether to award defendants' profits is "committed to the discretion of the district court." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). The Fifth Circuit has "identified a non-exhaustive list of factors to determine when a plaintiff is entitled to an accounting of the defendant's profits under § 1117(a): (1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting her rights; (5) the public interest in making the conduct unprofitable[;] and (6) whether it is a case of palming off." *Seatrax*, 200 F.3d at 369.

The summary judgment record is thin on evidence which might support an award of profits. For example, plaintiff submits no evidence of diverted sales and little from which the Court could reasonably infer that defendants acted with an intent to deceive consumers.[44] On the present state of the record, this appears to be a case in which an injunction alone will satisfy the equities, should

---

[44]R. Doc. No. 95, at 22.

plaintiff succeed on its claims of infringement. *See Seatrax*, 200 F.3d at 369; *see also* 5 McCarthy, *supra*, § 30:62 ("To put it bluntly, courts are not willing to grant an accounting of profits unless the judge 'gets mad' at the defendant."). However, because a trial is necessary on the merits of plaintiff's claims and defendants' counterclaim and affirmative defenses, the Court will benefit from a developed record before deciding whether an award of defendants' profits might be appropriate. Accordingly, defendants' motion for summary judgment is denied as to this issue.

**3)     Attorneys' Fees**

"Under § 1117, the court may award attorneys fees in 'exceptional' cases." *Seatrax*, 200 F.3d at 372-73. "The exceptional case is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful, and it has been interpreted by courts to require a showing of a high degree of culpability." *Id.* at 373 (alterations and internal quotation marks omitted). The Fifth Circuit cautions that "even deliberate copying of a mark does not automatically make a case 'exceptional.'" *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 537 (5th Cir. 2012). Accordingly, "'[a] district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense.'" *Id.* (quoting *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 66 (5th Cir. 1992)). Deciding whether a party acted with "the requisite level of culpability" to support a finding of an exceptional case "includes a subjective component." *See id.*

Although the trier of fact must decide the unsettled fact questions with respect to plaintiff's claims pursuant to the Lanham Act and LUTPA, the Court decides whether a case is exceptional pursuant to the Lanham Act for the purpose of awarding attorney's fees. *See id.* Even drawing all factual inferences in plaintiff's favor, the record does not support a finding of the "requisite level

17

of culpability." Defendants' defenses, even if they may not ultimately succeed at trial, are not remotely frivolous or asserted in bad faith. Plaintiff does not cite any authorities finding or affirming a finding that a factually similar case was "exceptional."[45] Accordingly, the Court concludes that this is not an exceptional case and defendants' motion for summary judgment is, therefore, granted as to the unavailability of attorney's fees pursuant to the Lanham Act.

LUTPA authorizes an award of "reasonable attorney fees and costs," but only "[i]n the event that damages are awarded." La. Rev. Stat. § 51:1409(A); *see also Gulf Rice Milling, Inc. v. Sonnier*, 930 So. 2d 256, 261-62 (La. App. 2d Cir. 2006) (affirming denial of request for attorney's fees pursuant to LUTPA because, although plaintiff recovered general damages for "embarrassment, humiliation, mental anguish, and worry," he did not recover actual damages).  As explained above, defendants' motion for summary judgment is granted as to actual damages, including actual damages pursuant to LUTPA. A verdict in plaintiff's favor on the LUTPA claim, therefore, will not result in an award of actual damages, and the parties have not addressed whether LUTPA authorizes any other relief that might support an award of attorney's fees. On or before Friday, February 20, 2015, the parties shall simultaneously file supplemental memoranda addressing whether attorney's fees remain available pursuant to LUTPA.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion for partial summary judgment is **DENIED**.

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** as to the unavailability of actual damages pursuant to the Lanham Act and LUTPA and as to the availability

---

[45]R. Doc. No. 23, at 23.

of attorney's fees pursuant to the Lanham Act, and **DENIED** in all other respects.

      **IT IS FURTHER ORDERED** that on or before Friday, February 20, 2015, the parties shall file memoranda of law addressing the potential availability of attorney's fees pursuant to LUTPA in the present circumstances of this case.

      New Orleans, Louisiana, February 10, 2015.

                 **LANCE M. AFRICK**
                 **UNITED STATES DISTRICT JUDGE**

19